UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 697 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIMITED BRANDS, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:09-cv-01008<br><br>Judge Sargus<br>Magistrate Judge Abel |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLUMBERS AND
PIPEFITTERS LOCALS 502 & 633 PENSION TRUST FUND'S MOTION FOR
APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD
AND LIAISON COUNSEL

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY (0063373)
GEOFFREY J. MOUL (0070663)
BRIAN K. MURPHY, Trial Attorney
(0070654)
326 S. High Street, Suite 400
Columbus, OH  43215

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
HENRY ROSEN
655 West Broadway, Suite 1900
San Diego, CA  92101
   – and –
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
58 South Service Road, Suite 200
Melville, NY  11747

I.  **INTRODUCTION**

Proposed lead plaintiff, Plumbers and Pipefitters Locals 502 & 633 Pension Trust Fund ("Plumbers and Pipefitters"), which has a significant financial interest in the outcome of this litigation as a result of its purchases of Limited Brands, Inc. ("Limited Brands" or the "Company") common stock between August 22, 2007 through February 28, 2008 (the "Class Period"), submits this Memorandum of Points and Authorities in support of its Motion, pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), for: (1) appointment as lead plaintiff; and (2) approval of its selection of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as lead counsel, and Murray Murphy Moul + Basil LLP ("MMM+B") as liaison counsel for the class.

Section 21D of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), sets forth the procedure for the selection of a lead plaintiff to prosecute class actions brought under the federal securities laws. *See* 15 U.S.C. §78u-4(a)(3)(B). Specifically, §21D(a)(3)(A)(i) provides that, within 20 days after the date on which a class action is filed under the PSLRA:

> [T]he plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).

The Exchange Act directs courts to then consider any motions brought by either plaintiffs or purported class members seeking to be appointed lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Under this provision of the PSLRA, the Court is to appoint as lead plaintiff the person that:

- 1 -

(aa) has either filed the complaint *or* made a motion in response to a notice ...;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[1]

Here, Plumbers and Pipefitters should be appointed lead plaintiff because it has the largest financial interest in the relief sought in this case and otherwise satisfies the requirements of Rule 23.[2] *See id.* Plumbers and Pipefitters suffered a loss of more than $66,397.57 in connection with its purchases of over 14,000 shares of Limited Brands common stock during the Class Period and is also typical and adequate to represent the class. *See* Declaration of Joseph F. Murray ("Murray Decl."), Exs.1, 2.

**II.  STATEMENT OF FACTS**

This is a class action on behalf of those persons who purchased or otherwise acquired Limited Brands common stock during the Class Period. Limited Brands is a specialty retailer of women's intimate and other apparel, beauty and personal care products and accessories under various trade names, including Victoria's Secret. The Company sells merchandise through retail

---

1   Unless otherwise noted, all emphasis is added and citations are omitted.

2   In addition, Congress's purpose in enacting the PSLRA was to encourage institutional investors, like Plumbers and Pipefitters, to play a more prominent role in securities class actions. See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors would be beneficial to the class because institutional investors with large financial stakes are better able to effectively manage complex securities litigation than individuals. *See id.* ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

stores, which are primarily mall-based, in the United States and Canada, and through websites and catalogues.

In 2006, Limited Brands decided to replace the outdated and costly direct-to-consumer infrastructure for the e-commerce business of its subsidiary, Victoria's Secret Direct, LLC ("VSD"), with new technology that would enable VSD to interact with customers in real time through shopping behavior-triggered online merchandising displays and e-mail promotions.

Limited Brands and VSD decided not to develop this new technology in-house. Rather, they chose to have it developed by a joint venture that would be funded by Limited Brands and General Catalyst Partners of Cambridge, Massachusetts. The joint venture was incorporated as Everest Commerce, Inc. and soon thereafter changed its name to n2N Commerce, Inc. ("n2N"). n2N management was dominated by individuals with connections to Limited Brands and Defendants Redgrave and Turney sat on n2N's board of directors. n2N's new software was to interact with, *inter alia*, a new one-million square foot warehouse and distribution center that Limited Brands was building for VSD.

According to the complaint, during the Class Period, defendants made numerous positive statements regarding the Company's financial condition, business and prospects. Specifically, the complaint alleges that defendants' statements were materially false and misleading because they misrepresented and/or failed to disclose adverse events surrounding the development of the new VSD warehouse and n2N technology and their likely adverse impact on VSD's and Limited Brands financial results long before Defendants began publicly disclosing this information in a slow trickle beginning in early November 2007. Among other things, as early as the Spring and Summer of 2007: (a) there were delays in providing the specifications necessary to build the software being developed by n2N; (b) critical personnel involved with n2N in designing the n2N software left Limited Brands in the early stages of the software's development; and (c) the Information

Technology departments of Limited Brands and VSD were in a state of chaos and VSD's highly touted automated distribution center was beset with difficulties. Indeed, as early as the summer of 2007, a memorandum was circulating internally within Limited Brands regarding its "Direct to Consumer Initiative" which described "Limited Brands leadership" as believing that a "significant change in approach" was necessary because "[t]he current working relationship between Limited Brands and n2N is not efficient or effective for delivering a solution that can be implemented in Limited Brands within an acceptable time frame and budget."

On February 27, 2008, Limited Brands issued a press release reporting fourth quarter and full year 2007 earnings. In the press release, the Company significantly lowered its previously-issued guidance for 2008. In response to the announcement, the price of Limited Brands common stock fell from $17.82 on February 27, 2008 to $15.85 on February 28, 2008 on heavy trading volume.

## III. PROCEDURAL BACKGROUND

This action has been filed against Limited Brands and certain of its current and former officers and directors as a putative class action on behalf of a class of investors who purchased Limited Brands common stock during the Class Period, while the Company's stock was artificially inflated due to defendants' misrepresentations and omissions.

The PSLRA requires prompt publication of a notice advising class members of their right to move within 60 days of publication to be appointed as lead plaintiff. On November 6, 2009, pursuant to §21D(a)(3)(A)(i) of the PSLRA, the first notice of pendency was published over *BusinessWire*. Murray Decl., Ex. 3. That notice advised class members of the existence of the securities class action lawsuit against Limited Brands, the claims asserted therein, the Class Period and their right to move for lead plaintiff within 60 days of the date of the notice. Thus, this motion is timely filed within 60 days from the publication of that notice pursuant to 15 U.S.C. §78u-4(a)(3)(A)(i).

IV.     ARGUMENT

   A.     **Plumbers and Pipefitters Should Be Appointed Lead Plaintiff**

      1.     **Plumbers and Pipefitters Believes It Has the Largest Financial Interest in the Outcome of This Litigation**

The PSLRA provides that this Court:

> [S]hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. §78u-4(a)(3)(B)(i).

The statute instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the person that has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

During the Class Period, Plumbers and Pipefitters expended nearly $313,000 to purchase over 14,000 shares of Limited Brands common stock at prices artificially inflated by defendants' materially false and misleading statements, and lost more than $66,000 as a result thereof. *See* Murray Decl., Ex. 2. Based on this financial interest and its ability to otherwise fairly and adequately represent the class, Plumbers and Pipefitters believes it is presumptively the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

      2.     **Plumbers and Pipefitters Is Qualified Under Rule 23**

Section 21D(a)(3)(B)(iii)(I) of the Exchange Act provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of the class representatives, Rule 23(a) requires that their claims be typical of the claims of the class and that the representatives will fairly

and adequately protect the interests of the class. As detailed below, Plumbers and Pipefitters satisfy the typicality and adequacy requirements of Rule 23(a).

### a. Plumbers and Pipefitters' Claims Are Typical of the Claims of the Class

Rule 23(a)(3) provides that the claims or defenses of the representative party must be typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) is satisfied when the named plaintiff has suffered the same or similar injuries as the absent class members, as a result of the same course of conduct by defendants, and its claims are based on the same legal issues. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996) ("'a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory'"); *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 404 (M.D. Tenn. 1996) (typicality may be satisfied "'even if there are factual distinctions between the named plaintiffs and those of other class members'"); *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998). The legal issues common to the members of the class which predominate over questions which may affect individual class members include the following:

1. Whether the defendants' acts violated federal securities laws;

2. Whether defendants omitted or misrepresented material facts;

3. Whether documents, SEC filings, press releases and other statements disseminated to the investing public and plaintiffs during the Class Period misrepresented material facts about the operations, financial condition and earnings of Limited Brands;

4. Whether defendants knew, had reason to know or recklessly disregarded that their statements were false and misleading;

5. Whether the market prices of Limited Brands common stock during the Class Period were artificially inflated due to material misrepresentations and the failure to correct the material misrepresentations complained of herein; and

6. The extent of damage sustained by class members and the appropriate measure of damages.

Here, there is a well-defined community of interest in the questions of law and fact involved in this case, because the claims asserted by Plumbers and Pipefitters are typical of the claims of the members of the proposed class. Plumbers and Pipefitters and members of the class allege that the defendants violated the Exchange Act by publicly disseminating materially false and misleading statements during the Class Period. Plumbers and Pipefitters, as did all of the members of the proposed class, purchased Limited Brands common stock at prices artificially inflated by defendants' misrepresentations and omissions, and were damaged thereby. Because the claims asserted here are premised on the same legal and remedial theories and are "based on the same types of alleged misrepresentations and omissions" as the class's claims, typicality is satisfied. *Sprague*, 133 F.3d at 399 (the "typicality requirement is [satisfied where] the representative's interests [are] aligned with those of the represented group, and ... the named plaintiff ... advance[s] the interests of the class members").

### b. Plumbers and Pipefitters Will Fairly and Adequately Represent the Interests of the Class

In the Sixth Circuit, adequacy is determined from common interests between the named plaintiff and the class and whether the representative "'will vigorously prosecute the interests of the class through qualified counsel.'" *Craft*, 174 F.R.D. at 405. Moreover, "[a]ny doubt regarding adequacy of representation should be resolved in favor of [sic] upholding the class." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998).

Here, Plumbers and Pipefitters' interests are clearly aligned with the members of the proposed class, and there is no evidence of any antagonism between its interests and those of the proposed class members. As detailed above, Plumbers and Pipefitters share substantially similar questions of law and fact with the members of the proposed class and its claims are typical of the members of the class. Moreover, Plumbers and Pipefitters has amply demonstrated its adequacy as a class representative by signing a certification affirming its willingness to serve as, and assume the responsibilities of, a class representative. *See* Murray Decl., Ex. 1. Finally, Plumbers and Pipefitters has selected a law firm that is highly experienced in prosecuting securities class actions such as this to represent it and the class.

Therefore, Plumbers and Pipefitters satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should be appointed lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### B. This Court Should Approve Plumbers and Pipefitters' Selection of Lead and Liaison Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Thus, the court should not disturb a lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Plumbers and Pipefitters has selected Coughlin Stoia as Lead Counsel for Lead Plaintiff and MMM+B as liaison counsel for the class. Coughlin Stoia possesses extensive experience litigating securities class actions and representing injured investors and is more than adequate to singularly represent the interests of the class. *See* Murray Decl., Exs. 4-5.

Indeed, Plumbers and Pipefitters, with Coughlin Stoia and MMM+B as its counsel, bring to this action a securities litigation team consisting of attorneys, investigators and forensic accountants who have repeatedly demonstrated their willingness to undertake the painstaking process of

unraveling securities fraud, accounting irregularities and improper transactions, all of whom will devote substantial resources to the prosecution of this action on behalf of all class members. *See id*.

Thus, the Court may be assured that in the event Plumbers and Pipefitters' motion is granted, the members of the class will receive the highest caliber of legal representation available from proposed lead and liaison counsel.

## V. CONCLUSION

For all the foregoing reasons, Plumbers and Pipefitters respectfully requests that the Court: (1) appoint it as lead plaintiff pursuant to §21D(a)(3)(B) of the Exchange Act; and (2) approve its selection of Coughlin Stoia as lead counsel and MMM+B as liaison counsel for the class.

DATED: January 5, 2010  MURRAY MURPHY MOUL + BASIL LLP

/s/ JOSEPH F. MURRAY (0063373)

JOSEPH F. MURRAY (0063373)
GEOFFREY J. MOUL (0070663)
BRIAN K. MURPHY (0070654)
326 S. High Street, Suite 400
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
E-mail: murphy@mmmb.com

[Proposed] Liaison Counsel

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
HENRY ROSEN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail: henryr@csgrr.com

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
E-mail:  srudman@csgrr.com
E-mail:  drosenfeld@csgrr.com
E-mail:  malba@csgrr.com

[Proposed] Lead Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 5, 2010.


      **s/ Brian K. Murphy**
BRIAN K. MURPHY
MURRAY MURPHY MOUL + BASIL LLP
1533 Lake Shore Drive, Suite 150
Columbus, OH 43204
Telephone:  614-488-0400
E-mail:  murphy@mmmb.com